969 F.2d 560
 59 Fair Empl.Prac.Cas. (BNA) 775,
59 Empl. Prac. Dec. P 41,664
Kate T. SELAN, Plaintiff-Appellant,
v.
Ann KILEY, Illinois Department of Mental Health, Illinois
State Psychiatric Institute, and Ronald Davidson,
Defendants-Appellees.
 No. 90-3623.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 8, 1991.
Decided Aug. 4, 1992.
 
 Gerald A. Goldman, Arthur R. Ehrlich (argued), Goldman & Marcus, Chicago, Ill., for plaintiff-appellant.
 Paula Giroux, Asst. Atty. Gen., Ann Plunkett Sheldon, Daniel N. Malato, Asst. Atty. Gen. (argued), Office of Atty. Gen., Civil Appeals Div., Chicago, Ill., for defendants-appellees.
 Before CUMMINGS and RIPPLE, Circuit Judges, and CRABB, District Judge.*
 RIPPLE, Circuit Judge.
 
 
 1
 Plaintiff-appellant Kate Selan filed this employment discrimination suit against her employer, the Illinois Department of Mental Health, her place of employment, the Illinois State Psychiatric Institute, and two of her supervisors. Ms. Selan alleged that the defendants had discriminated against her on the basis of age, retaliated against her for testifying in a co-worker's racial discrimination suit, denied her right to enforce grievance provisions of her employment contract, and breached her employment contract. The district court granted the defendants partial summary judgment; the court found that some of the claims were time-barred and others were premature. The remaining claims were tried before the bench, and the court found in favor of the defendants. Ms. Selan appeals, and we affirm.I
 
 BACKGROUND
 A. Facts
 
 2
 On August 4, 1976, Kate Selan, a certified social worker with a masters degree in social work, began working for the Illinois Department of Mental Health (IDMH) as one of five unit chiefs at the Read Henry Horner Children's Center (Horner), in Chicago. Ronald Davidson, Ph.D., was the director at Horner from January or March 1985 through February 1986. At all relevant times, Ann Kiley was director of the IDMH. On May 31, 1985, when Ms. Selan was fifty-nine years old, the IDMH transferred her to the Illinois State Psychiatric Institute (the Institute), also in Chicago, where she assumed a lower-rank position but maintained the same salary and benefits she enjoyed at Horner. The position she had held at Horner was filled by two younger employees: Arthur Bloch, M.D., who was thirty-six years old at the time of Ms. Selan's transfer, and Lois McCarthy, a certified social worker, who was also thirty-six when Ms. Selan was transferred. In February 1986, Dr. Davidson also transferred from Horner to the Institute and became its associate director.
 
 
 3
 On June 16, 1986, Ms. Selan received a written reprimand from Jim Guidi, her direct supervisor at the Institute, for unprofessional conduct and use of abusive language toward a supervisor. On August 29, 1986, Ms. Selan received a written reprimand for nonfeasance and poor work performance from Susan Nowak, M.D., her unit director. In late 1986 or early 1987, Ms. Selan testified on behalf of a fellow employee, Chester Riley, who alleged that he had been discriminated against on the basis of his race. On May 30, 1987, Ms. Selan received a three-day suspension for "nonfeasance and failure to follow established procedures." Joint Statement of Uncontested Facts, (R.49) at 7. On November 2, 1987, Ms. Selan received a ten-day suspension for "harassment and verbal abuse of subordinates; failure to follow unit policies, and verbal threats and intimidation of co-workers." Id.
 
 
 4
 While she was employed at the Institute, Ms. Selan performed several functions, including clinical supervision of other social workers, administrative supervision of other social workers,[1] and individual psychotherapy of adolescent clients. In late 1985, then associate unit chief James Guidi removed from Ms. Selan responsibility for the individual psychotherapy of an adolescent client, "RS". After 1985, Ms. Selan never requested, and was never assigned, individual psychotherapy duties. In January 1986, Ms. Selan was assigned supervision of Mary Diamond, a new employee at the Institute. In June 1987, Ms. Selan began supervising Christina Kraemer, who was also a new employee at the Institute. In September and October 1987, Diamond and Kraemer each requested a new supervisor. In October 1987, both requests were granted, and Ms. Selan ceased supervising Kraemer and Diamond. Ms. Selan did not request any additional clinical supervisory duties.
 
 
 5
 On or around July 1, 1988, Ms. Selan applied to the Institute's social work privileging committee for a renewal of her professional privileges. The committee, an advisory body without mandate power, was composed of seven social workers who were Ms. Selan's peers; none of the individual defendants and no member of the Institute's administration took part in committee decisions. On or about July 25, 1988, the committee granted Ms. Selan's request for recordkeeping, client assessment, crisis intervention, discharge planning, and administrative supervision privileges, but denied her request for clinical supervision privileges. Ms. Selan did not request and did not receive individual psychotherapy privileges.
 
 
 6
 In 1987 and 1988, Ms. Selan filed four grievances under state administrative regulations against the defendants. Grievance number 88-05-105 alleged that the defendants wrongfully removed her supervisory responsibilities; grievance number 88-55-70 contested the three-day suspension; grievance number 88-45-104 contested her February 1987 performance evaluation; and grievance number 88-55-71 challenged the ten-day suspension. The grievances advanced to the fourth and final level of review, at which time Ms. Selan requested that further review be stayed until after trial in this case.
 
 B. District Court Proceedings
 
 7
 On October 11, 1989, Ms. Selan filed a five-count complaint against IDMH, the Institute, Dr. Davidson, and Ms. Kiley, in federal district court. Count one alleged that the defendants had violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, by (1) transferring her from unit chief at Horner to a less prestigious position at the Institute and replacing her with younger employees, and (2) "removing her professional credentials" by withdrawing her clinical supervision privileges in 1988. Count two alleged that the defendants had violated 42 U.S.C. § 1983 and her rights under the Equal Protection Clause by demoting her and withdrawing her privileges in retaliation for her participation in Chester Riley's discrimination suit. Count three alleged that the defendants had violated 42 U.S.C. § 1981 by denying Ms. Selan her right to enforce her contractual grievance rights, also in retaliation for her having helped Riley. Count four alleged that the defendants had breached her employment contract, in violation of Illinois law, by denying her meritorious grievances. On November 8, 1989, Ms. Selan amended her complaint to add count five, alleging that the defendants' retaliatory action also violated her rights under Title VII, 42 U.S.C. § 2000e.
 
 
 8
 The defendants moved for partial summary judgment. The court granted summary judgment as to those parts of counts one, two, and three that concerned the May 31, 1985,[2] transfer/demotion from Horner to the Institute. Because the transfer/demotion occurred more than four years before Ms. Selan filed her complaint (October 11, 1989), the court ruled that claims concerning it were barred by the applicable statute of limitations. However, the court found that the second act alleged--the withdrawal of supervisory privileges in July and August 1988--was within the statutory timeframe. The court rejected Ms. Selan's argument that the two acts were part of a continuing pattern of discrimination. The court granted summary judgment as to all of count four because Ms. Selan had voluntarily stayed the grievance procedure, and thus the grievances had never reached a final adjudication that could constitute a denial. The court did not address count five because the defendants had not moved for summary judgment with respect to count five. Mem. Op. of Sept. 26, 1990, (R.41) at 1-6.
 
 
 9
 Thus, the case "boiled down to plaintiff's allegations that she was denied her professional privileges and credentials July 25, 1988 by reason of age discrimination by defendants and in retaliation for her making statements favorable to Chester Riley's racial discrimination claim." Mem.Op. of Oct. 29, 1990, (R.51) at 3. The case was tried before the bench, and the court found in favor of the defendants and against Ms. Selan on the remaining claims.
 
 II
 ANALYSIS
 
 10
 Ms. Selan raises two main issues on appeal: (A) whether the district court erred on summary judgment in finding that there was not a continuing pattern of discrimination, and (B) whether the court erred after trial in finding that the defendants' removal of Ms. Selan's psychotherapy and clinical supervision duties was not an act of age discrimination or retaliation.
 
 A. Continuing Pattern of Discrimination
 
 11
 In response to the defendants' motion for partial summary judgment, Ms. Selan attempted to persuade the district court that her claims regarding the May 1985 demotion/transfer were not time-barred because that event was part of a continuing pattern of discrimination against her. The district court rejected this argument because the complaint did not allege a continuing violation but, rather, only two acts that were more than three years apart--the May 31, 1985, demotion/transfer and the July 25, 1988, removal of privileges. Mem.Op. of Sept. 26, 1990, (R.41) at 2. On appeal, Ms. Selan contends that the district court overlooked evidence of additional events between 1985 and 1988, which she offered in her response to the defendants' motion for summary judgment.
 
 1. Standard of review
 
 12
 We review de novo a district court's grant of summary judgment. Doe v. Allied-Signal, Inc., 925 F.2d 1007, 1008 (7th Cir.1991). We " 'must view the record and all inferences drawn from it in the light most favorable to the party opposing the motion.' " Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990) (quoting Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir.1989)). While any inferences drawn from the facts must be viewed in the light most favorable to the non-moving party, only reasonable inferences need be drawn. Hermes v. Hein, 742 F.2d 350, 353 (7th Cir.1984); Korf v. Ball State Univ., 726 F.2d 1222, 1226 (7th Cir.1984). Our task is to determine whether the record reveals that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). "A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party." La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 900, 905 (7th Cir.1990).
 
 
 13
 The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); id. at 325, 106 S.Ct. at 2553-54 ("the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. Id. at 324, 106 S.Ct. at 2553. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Id. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).
 
 2. Legal standard
 
 14
 The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period. This court most fully addressed the continuing violation doctrine in Stewart v. CPC International, Inc., 679 F.2d 117 (7th Cir.1982). In Stewart, we discussed three viable continuing violation theories.[3] The first theory stems from "cases, usually involving hiring or promotion practices, where the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the 'violation' occurred." Id. at 120.[4] Courts have tolled the statute in such cases for equitable reasons similar to those underlying the federal equitable tolling doctrine. Although Ms. Selan's 1985 transfer/demotion arguably took place over several days (indeed, several weeks passed between the day the decision was made, the day the decision was communicated to Ms. Selan, and the day she actually transferred), this theory is not relevant to this case because even the latest date of the 1985 transfer fell outside of the limitations period. The second theory stems from cases in which the employer has an express, openly espoused policy that is alleged to be discriminatory. Id. at 121.[5] Because Ms. Selan did not allege that the defendants in this case had an express, openly espoused policy of discriminating against older workers, this theory is not relevant to this case. The third continuing violation theory stems from cases in which "the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy.... In such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory, acts." Id. This brand of continuing violation has also been referred to as a "serial violation," Mack, 871 F.2d at 183, and as a "pattern of ongoing discrimination." Santos v. Rush-Presbyterian-St. Luke's Med. Ctr., 641 F.Supp. 353, 357 (N.D.Ill.1986). This theory, if any, may be applicable to this case.
 
 
 15
 Under the third theory, the question is whether, in response to the defendants' motion for summary judgment, Ms. Selan produced sufficient evidence to establish that there existed a genuine issue of fact whether the defendants' acts were "related closely enough to constitute a continuing violation" or were "merely discrete, isolated, and completed acts which must be regarded as individual violations." Berry v. Board of Supervisors of L.S.U., 715 F.2d 971, 981 (5th Cir.1983). The Fifth Circuit has suggested three factors to consider in making this determination:
 
 
 16
 The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a bi-weekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?
 
 
 17
 Id.[6] This court and others have stressed the significance of the third factor:
 
 
 18
 What justifies treating a series of separate violations as a continuing violation? Only that it would have been unreasonable to require the plaintiff to sue separately on each one. In a setting of alleged discrimination, ordinarily this will be because the plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory treatment.
 
 
 19
 Malhotra v. Cotter & Co., 885 F.2d 1305, 1310 (7th Cir.1989).[7]
 
 3. Discussion
 
 20
 In her complaint, Ms. Selan alleged only two acts: the May 31, 1985, transfer/demotion and the July 25, 1988, removal of privileges. In her response to the defendants' motion for summary judgment, Ms. Selan alleged that "[i]n between these two (2) acts, the Defendants removed several other of Plaintiff's duties." R.37 at 3. Ms. Selan invited the court's attention to two of the defendants' interrogatory responses, which Ms. Selan attached as an exhibit to her response to the motion for summary judgment. The defendants' first interrogatory response details Ms. Selan's job responsibilities at four different points in time: (1) June 1985, (2) February 1986, (3) February 1987, and (4) February 1988. This reveals that there were only minor changes in Ms. Selan's job responsibilities from June 1985, through February 1987, but, beginning in February 1988, Ms. Selan was no longer responsible for supervising unit social workers. R. 37 Ex.A at 5-8. The second interrogatory response capsulizes the changes detailed in the first response and identifies "the individuals who recommended or directed" these changes:
 
 ANSWER:
 
 21
 The removal of the Plaintiff's supervisory responsibilities occurred in the latter part of 1987, following disrupting activities and confrontations with both her subordinates and supervisors. This decision is addressed in a memorandum from ISPI Director James T. Barter, M.D. to Ms. DrexEllen Armstrong, DMH/DD Director of Human Resources, dated January 8, 1990 (Attached).
 
 
 22
 The removal of the Plaintiff's caseload responsibilities occurred in 1988. Reasons for this decision are addressed in the same memorandum and related documentation. Individuals participating in the decision(s) to alter the Plaintiff's duties and responsibilities included:
 
 
 23
 Ronald Davidson, Ph.D., Asst. Clinical Director for Adolescent Services
 
 
 24
 Susan Nowak, M.D., Unit Chief, 7 West 1985-1989
 
 
 25
 James Guidi, Psy.D., Unit Chief, 7 West 1989-present
 
 
 26
 R.37 Ex.A at 9. Thus, viewing the evidence in the light most favorable to Ms. Selan, she presented the court with evidence of two acts that occurred between the May 1985 transfer and the July 1988 removal of privileges: the late-1985 removal of individual psychotherapy responsibility, and the October 1987 removal of clinical supervision responsibility.[8] Ms. Selan contends that these separate acts support the conclusion that the time-barred 1985 transfer/demotion was part of a pattern of discrimination--a continuing violation. We now consider this argument in light of the three factors suggested by the Fifth Circuit in Berry.
 
 
 27
 First, subject matter: do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? All four acts[9] allegedly stem from age and/or race discrimination and involve the same type of action: taking away responsibility from Ms. Selan. Thus, this first factor militates in favor of finding a continuing violation. Second, frequency: are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? Almost two years passed between the late-1985 removal of individual psychotherapy duties and the October 1987 removal of clinical supervisory duties. This considerable separation weighs heavily against finding a continuing violation. Third, degree of permanence: did the time-barred act have the degree of permanence which should have triggered the employee's awareness that his rights were violated? Ms. Selan offered no evidence to support an inference that she considered any of the changes to be temporary. In particular, the 1985 transfer, with the accompanying loss of designation as "unit head," is precisely the type of major, permanent change in employment status that should trigger an employee's awareness of the need to assert--or else lose--his rights.[10]
 
 
 28
 Thus, despite the fact that the alleged acts were similar in type, the two-year gap and the permanence of the 1985 transfer/demotion negates the contention that the acts were continuous or connected. Viewing the record and all inferences drawn from it in the light most favorable to Ms. Selan, we agree with the district court that there was no genuine issue of material fact whether there was a continuing violation. Even if each of the acts alleged was discriminatory or retaliatory, they were not part of a continuing violation. Thus, the district court was correct to grant the defendants partial summary judgment; the claims stemming from the May 1985 transfer/demotion were timebarred.
 
 B. The 1988 Loss of Privileges
 
 29
 Ms. Selan's remaining challenge is to the district court's ruling, following a bench trial, that the defendants did not discriminate or retaliate against Ms. Selan so as to cause the loss of her privileges in 1988.[11]
 
 1. Standard of review
 
 30
 This case was tried to the bench, and the court entered findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a). While we review the court's findings of fact under a clearly erroneous standard, we review the court's legal conclusions de novo. Pullman-Standard v. Swint, 456 U.S. 273, 287-90, 102 S.Ct. 1781, 1789-91, 72 L.Ed.2d 66 (1982); Forum Corp. of N. Am. v. Forum, Ltd., 903 F.2d 434, 438 (7th Cir.1990); Jennings v. Tinley Park Community Consol. Sch. Dist. No. 146, 864 F.2d 1368, 1373 (7th Cir.1988).
 
 
 31
 2. The district court's findings and conclusions
 
 
 32
 The court determined that the decision not to renew Ms. Selan's clinical supervisory privileges was not made by any of the defendants. Rather, that decision was made by the Institute's social work privileging committee--a panel of Ms. Selan's peers. The court also determined that the committee was required to decide as it did because of a rule which required that a person seeking renewal of privileges for a given function must actually be performing that function at or near the time of application. The committee included the following comment on her application:
 
 
 33
 As per our instructions and guidelines, individual workers can only be privileged for actual duties and functions they are performing at the time of the review. If duties have been withdrawn by your supervisors, you cannot be privileged for those duties.
 
 
 34
 Def's Ex.20. The court also found no evidence that the individual defendants were aware of the rule or its potential effect upon Ms. Selan. Thus, the court concluded that defendants did not directly remove Ms. Selan's privileges.
 
 
 35
 Nonetheless, as Ms. Selan properly notes, to the extent that Dr. Davidson participated in or was responsible for the decisions to remove her psychotherapy and supervisory duties, the defendants indirectly caused the removal of her privileges. Ms. Selan submits that the district court's failure to articulate specifically this indirect connection was reversible error. To the contrary, we believe that this important connection was implicit in the district court's analysis. The court did not stop with its finding that Dr. Davidson did not directly cause the removal of Ms. Selan's privileges. Rather, the court continued on to address the crucial issue: whether the removal of Ms. Selan's individual psychotherapy and clinical supervisory duties was a product of age discrimination or race-related retaliation. The court made the following findings of fact relevant to this determination:
 
 
 36
 It was undisputed that social work for the 7-W Unit, where plaintiff worked while at [the Institute], was not performed by staff members such as plaintiff. Rather, it was and is performed by trainees who are attending the area's professional schools.
 
 
 37
 The evidence disclosed that after being relieved of further responsibility for treatment of her only patient "RS" she made no request for assignments to treat patients to satisfy the "presently performing psychotherapy" requirement for the continuation of privileges. Similarly, when trainees Diamond and Kraemer refused her further supervision of them she made no request for new supervision assignments to meet the "performing supervision" requirements to receive privileges.
 
 
 38
 Further, there was no evidence to support plaintiff's contention that her assistance to Chester Riley bore any relation to the loss of her responsibility for "RS", her last and only psychotherapy patient before the loss of her privileges, and the loss of her supervisory duties. The evidence established a credible basis for the denial of further treatment of "RS" and the refusal of Diamond and Kraemer to be supervised further by plaintiff in 1987. The relationship of these incidents to the Chester Riley assistance would be speculative at best.
 
 
 39
 Mem.Op. of Oct. 29, 1990, (R.51) at 4-5. Ms. Selan does not contest these findings of fact, let alone meet the heavy burden of persuading this court that they are clearly erroneous.[12] Based upon these factual findings, the district court concluded that "plaintiff failed to prove by a preponderance of the evidence that she was denied her professional psychotherapy privileges either by reason of her age or in retaliation by defendants for her assistance to Chester Riley's racial discrimination claim." Id. The district court's development of these facts and analysis of the reasons why Ms. Selan's duties were curtailed implies an understanding of the indirect causal connection between removal of duties and removal of privileges; if the court had been unaware of the indirect connection, such factual development and analysis would have been unnecessary and irrelevant. Thus, we find no error in the district court's analysis.[13]
 
 CONCLUSION
 
 40
 For the foregoing reasons, the judgment of the district court, initially granting partial summary judgment with respect to claims relating to the May 1985 transfer/demotion, and ultimately granting judgment to the defendants on all claims, is affirmed.
 
 AFFIRMED
 
 
 *
 The Honorable Barbara B. Crabb, Chief Judge of the Western District of Wisconsin, is sitting by designation
 
 
 [1]
 This type of supervision involved overseeing timekeeping, scheduling, daily census reports, and other recordkeeping
 
 
 [2]
 The complaint alleged that the transfer/demotion occurred on October 15, 1987, but the defendants produced evidence, and Ms. Selan conceded, that the date was actually May 31, 1985
 
 
 [3]
 We also noted that a fourth theory, the present-effects-of-past-discrimination theory, was rejected by the Supreme Court in United Air Lines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)
 
 
 [4]
 See, e.g., Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (faculty tenure decision)
 
 
 [5]
 Other circuits have referred to these as "systemic" continuing violations. Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 183 (1st Cir.1989) (entire promotional system alleged to be discriminatory); see also Bartmess v. Drewrys USA, Inc., 444 F.2d 1186 (7th Cir.) (retirement policy openly discriminatory), cert. denied, 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971)
 
 
 [6]
 See also Sabree v. United Bhd. of Carpenters & Joiners Local No. 33, 921 F.2d 396, 402 (1st Cir.1990); Hendrix v. City of Yazoo City, 911 F.2d 1102, 1104 (5th Cir.1990); Glass v. Petro-Tex Chem. Corp., 757 F.2d 1554, 1561 n. 5 (5th Cir.1985); Santos, 641 F.Supp. at 358
 
 
 [7]
 See also Petro-Tex, 757 F.2d at 1561 n. 5 ("core idea"); Hendrix, 911 F.2d at 1104 ("key to the inquiry"); Sabree, 921 F.2d at 402 ("the most important"); cf. Dumas v. Town of Mount Vernon, 612 F.2d 974, 978 (5th Cir.1980) ("The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights, or when he should have perceived that discrimination was occurring.")
 
 
 [8]
 On appeal, Ms. Selan argues that there were other relevant acts, evidence of which was adduced at trial, to support the continuing violation theory. We note, with reference to our articulation of the standard of review of a grant of summary judgment, that the only acts relevant to our review are those that Ms. Selan brought to the district court's attention--by reference to specific facts in affidavits, depositions, answers to interrogatories or admissions--in response to the defendants' motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)
 
 
 [9]
 The four alleged acts are: the May 1985 transfer/demotion, the late-1985 removal of individual psychotherapy duties, the October 1987 removal of clinical supervisory duties, and the July 1988 removal of clinical supervisory privileges
 
 
 [10]
 See Sabree v. United Bhd. of Carpenters & Joiners Local No. 33, 921 F.2d 396, 402 (1st Cir.1990) (union denial of application and, later, of transfer, should have triggered awareness of discrimination); Hendrix v. City of Yazoo City, 911 F.2d 1102, 1104-05 (5th Cir.1990) (reduction in salary should have triggered employees awareness of and duty to assert rights). But see Glass v. Petro-Tex Chem. Corp., 757 F.2d 1554, 1562 (5th Cir.1985) (denial of promotion combined with comment of one co-worker not enough)
 
 
 [11]
 Ms. Selan also contends that, even if there was not a continuing violation and the demotion/transfer claim is time-barred, the district court erred on October 29, 1990, when it failed to consider the circumstances surrounding the demotion/transfer as "relevant background evidence" of the defendants' discriminatory intent in later withdrawing her responsibilities. But the district court did mention the demotion/transfer in its October 29, 1990, opinion, R.51 at 1, and there was evidence of the event presented at trial. See, e.g., Tr.18-19, 37-38, 40-41, 110-12, 151-59, 342-62, 377-82. Also, the alleged "smoking gun" documents of age discrimination in the 1985 transfer/demotion, Plaintiff's Exhibits 2 and 4, were admitted as evidence at trial. Tr.58-60, 66, 147-48
 
 
 [12]
 In her reply brief in this court, Ms. Selan indirectly challenges the district court's factual findings and argues that the district court erred by addressing the issue of discrimination vel non rather than by utilizing the burden-shifting analytical framework. We shall not address an argument raised for the first time in the reply brief. "All arguments for reversal must appear in the opening brief, so that the appellee may address them. We have consistently refused to consider arguments withheld until the reply brief." Wilson v. O'Leary, 895 F.2d 378, 384 (7th Cir.1990). We note, however, that this court has approved of collapsing the burden-shifting framework, after trial, to the ultimate question of discrimination vel non, see United States EEOC v. Century Broadcasting Corp., 957 F.2d 1446, 1455 (7th Cir.1992) (collecting cases), and the district court's factual findings were well supported by the record. See, e.g., Testimony of Dr. Guidi, Tr.133-34 (re: students performing therapy, rather than staff social workers), Tr.135-206 (reason why Ms. Selan was removed from responsibility for RS), Tr.207 (Ms. Selan never requested additional psychotherapy duties after RS); Testimony of Ms. Selan, Tr.89 (conceding that she never requested additional psychotherapy duties after RS); Testimony of Christina Kraemer, Tr.264-74 (fact that Kraemer requested a new supervisor and why); Testimony of Mary Diamond, Tr.290-301 (fact that Diamond requested a new supervisor and why)
 
 
 [13]
 Ms. Selan also calls to our attention the final paragraph of the district court's October 29, 1990, opinion:
 Finally, the Court feels compelled to observe that although plaintiff appeared to remember all the events relevant to her claims in considerable detail, she either purposely or with carelessness in the extreme, described in her pro se amended complaint the date of her demotion and transfer as October 15, 1987, a date that would bring the conduct within the statute of limitations. In fact, the complained-of conduct occurred almost two years and four months earlier on May 31, 1985, a date beyond the statute of limitations. The matter was resolved by summary judgment for defendant as to any claim arising from that conduct.
 Mem.Op. at 6. In a brief argument--shorter than the objected-to paragraph in the court's opinion--Ms. Selan suggests that the court's comment was prejudicial error. Ms. Selan does not explain how the court's comment prejudiced her case, nor does she cite any authority for her claim of error. Such a cursory presentment does not comply with Federal Rule of Appellate Procedure 28(a)(5) and, thus, does not merit our attention. See Beard v. Whitley County REMC, 840 F.2d 405, 408 (7th Cir.1988).