Ronald C. PAYNE, Latane Brackett, Michael Redman, Marvin Fields, Patricia Handy, Kay Kneeland, Patricia Ricks, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

ABBOTT LABORATORIES, Defendant.

No. 97 C 3882.

United States District Court, N.D. Illinois, Eastern Division.

March 30, 1998.

Patrick Martin Ouimet, Michael Vincent Marsh, Sarles & Ouimet, Chicago, IL, for Ronald C. Payne.

Patrick Martin Ouimet, Sarles & Ouimet, Chicago, IL, for Latane Brackett, Michael Redman, Marvin Fields, Patricia Handy, Kay Kneeland, Patricia Ricks.

Andrea L. Zopp, Natalie J. Spears, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Abbott Laboratories, Defendant.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Plaintiffs bring a nation-wide class action lawsuit against Abbott Laboratories ("Abbott") on behalf of African–American officials, managers, professionals and sales workers employed by Abbott, alleging claims of race discrimination under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. Abbot moves to dismiss portions of the Amended Complaint and transfer the case to the Southern District of Ohio.

## BACKGROUND

On May 28, 1997, Ronald Payne filed the initial two-count complaint in this action on behalf of himself and all others similarly situated. On August 12, 1997, plaintiff amended the complaint to add six additional plaintiffs to his § 1981 claim. Plaintiffs allegations of class-wide discrimination are based both on disparate treatment and disparate impact. Specifically, plaintiffs claim that Abbott has engaged in a continuing pattern and practice of discrimination by denying its African–American employees "employment opportunities such as equal consideration for management level positions and promotions, desirable job assignments, training and equal treatment and consideration in employment compensation and benefits." Amend.Compl. ¶ 15. Plaintiffs also present statistical evidence of Abbott's discriminatory practices. Plaintiffs attach and incorporate in their complaint, a "Glass Ceiling Study," which indicates that 91.4% of Abbott's Ross Division high-level officials, managers, professionals, sales workers and employees with grade levels between 18 and 49, were white. Plaintiffs also attach Abbott's EEO–1 Reports, which reflect a similar racial make-up at Abbott company-wide.

Additionally, the Amended Complaint alleges the following facts with regard to each named plaintiff, which the court takes as true for the purposes of this motion to dismiss. *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996).

### Ronald Payne

Ronald Payne is the sole named plaintiff for plaintiffs' Title VII claim. On April 20, 1985, Payne began working for Abbott in the Ross Products Division, as an Employment Relations Representative, a Grade Level 14 position. Payne was promoted to a Grade Level 18 Manager of Human Resources for a Ross Products Division facility located in Sturgis, Michigan in March, 1986. This promotion marked the end of Payne's rise through Abbott's corporate ranks. For the duration of his employment with Abbott, Payne was only laterally moved, retaining Grade Level 18 status. In March of 1992, Payne was transferred to the position of Manager of Employment of Abbott's Ross

Division and in October of 1994, Payne was moved to the position of Manager of Human Resource Projects at Abbott's Ross Division.

On March 13, 1996, Payne was terminated. In September or October, 1996, Payne discovered that his former responsibilities were taken over by a less-qualified, white male. On February 28, 1997, Payne filed an EEOC charge claiming, inter alia, that he was terminated as a result of his race and that "minority employees of Abbott['s] Ross Products Division, have not and do not receive the same treatment or consideration in promotional opportunities, management positions and other employment benefits that white employees receive."

### Latrane Brackett

On March 16, 1992, plaintiff Latrane Brackett began working for Abbott as a Staff Electrical Engineer. Brackett remained in this position until he voluntarily resigned from his position on May 31, 1996. Brackett alleges that he was denied promotional opportunities because of Abbott's discriminatory policies and practices.

### Michael Redman

Plaintiff Michael Redman began working for Abbott as a Grade Level 15 Supervisor of Safety. In July, 1989, Redman was promoted to a Grade Level 18 Official Manager. In 1993, Redman resigned from his position at Abbott allegedly because he was not promoted.

### Marvin Fields

Plaintiff Marvin Fields is currently employed by Abbott. He began working for the company in 1987 as a Grade Level 16 Senior Project Engineer. In June, 1989, Fields was promoted to a Grade Level 18 Project Engineer. Despite consistent positive job performance evaluations, Fields has retained his same grade level since 1989 and has been only laterally transferred to other positions. Fields claims that despite his qualifications, demonstrated ability and seniority, he has been denied the same opportunities and job-related benefits which were given to white employees.

### Patricia Handy

Plaintiff Patricia Handy began working with Abbott as a Grade Level 15 Compensation Specialist in July, 1983. In March, 1982, she was promoted to a Grade Level 16, Senior Employment Specialist at Abbott's Ross Division. In May, 1986, Handy was laterally moved to the position of Management Recruiter of Corporate Staffing. Handy was again promoted in December, 1991 to a Grade Level 17 Manager of Staffing for Abbott's Pharmaceutical Products Division.

In February, 1995, Handy was given a paid leave of absence in order to go "on loan" to the Lake County Urban League. In March, 1996, Abbott denied Handy's request to extend her "on loan" status, and instead, she was given a one-year leave of absence to continue working at the Lake County Urban League. When Handy's leave expired in March 1997, she resumed work for Abbott as a non-exempt, hourly, part-time Staff Recruiter with the Chemical and Agricultural Products Division of Abbott. Handy alleges that she was denied promotional opportunities due to Abbott's continuing discriminatory policies and practices.

### Kay Kneeland

Kay Kneeland is currently employed by Abbott. He began working for the company in 1980 as a Grade Level 11 Employment Recruiter. In 1993, Kneeland was promoted to a Grade Level 13 Employee Relations Specialist. From 1993 to 1996, Kneeland's grade level status increased to a Grade Level 16. However, since 1996, Kneeland has not been promoted. In 1996, Kneeland was moved laterally to the position of Employee Relation/Human Resources Generalist, Diagnostic Products Division. In February, 1997, Kneeland was again laterally moved to her current position, Human Resources Generalist of Abbott's Diagnostic Products Division. According to Kneeland, she was unable to rise above her Grade Level 16 status into higher level management positions because of her race.

### Patricia Ricks

In 1983, Patricia Ricks began working at Abbott as a Grade Level 11 Professional Sales Representative. From 1983 to 1990, Ricks retained her position while her grade level increased to a 14. In September, 1990, Ricks was promoted to a Grade Level 15 Regional Training Specialist. In December 1991, Ricks was promoted to the position she

currently holds, a Grade Level 18 District Sales Manager. Ricks claims she was denied promotional opportunities as a result of her race.

## MOTION TO DISMISS STANDARD

In ruling on Abbott's motion to dismiss, the court adheres to the familiar standard of viewing the complaint in the light most favorable to plaintiff. Consequently, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Antonelli,* 81 F.3d at 1427; *Teague v. United States Postal Serv.,* No. 94 C 2152, 1997 WL 803869, at *2 (N.D.Ill. Dec.29, 1997). The court will only dismiss a complaint for failure to state a claim if no relief may be granted under any set of facts that could be proven consistent with the allegations found in the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

## TITLE VII CLAIM

In Illinois, an individual must file an EEOC charge within three hundred days of the alleged discriminatory conduct; failure to file within that time bars litigation of plaintiff's claims. 42 U.S.C. § 2000e–5(e); *Speer v. Rand McNally & Co.,* 123 F.3d 658, 662 (7th Cir.1997). However, it is well established that the EEOC filing requirement is not a jurisdictional prerequisite but a requirement that, like a statute of limitations, is subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Payne filed his EEOC charge on January 7, 1997, exactly 300 days after his termination on March 13, 1996. Although Abbott concedes that plaintiffs' complaint sets forth a timely cause of action concerning Payne's termination, Abbott contends that Payne's allegations regarding any discriminatory acts prior to March 13, 1996 are time-barred.

Plaintiffs attempt to overcome the untimely filing of Payne's EEOC charge by arguing that Abbott's conduct constitutes a continuing violation. Specifically, plaintiffs argue that,

> [t]he combined events of being terminated without cause on grounds that are not applied to white employees and being replaced by a less qualified white male, coupled with the statistical evidence of Abbott's 'Glass Ceiling' Study and EEO–1 Reports, convinced Mr. Payne that Abbott did indeed engage in a continuing policy and practice of discriminatorily denying high-level positions and job opportunities to qualified African Americans.

Pls.' Resp. at 3–4.

The continuing violation doctrine "allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitation period." *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992). For purposes of the limitations period, courts treat a series of improper acts as "one continuous act that ends within the limitations period." *Id.* For the theory to apply, there must be at least one viable charge within the limitations period. *EEOC v. Harvey L. Walner & Assoc.,* 91 F.3d 963, 969 (7th Cir.1996).

The Seventh Circuit has recognized three particular situations where the continuing violation doctrine applies. *Selan,* 969 F.2d at 565. The first is when the employer's decision making process takes place over a period of time, making it difficult for the employee to recognize that discrimination occurred. *Id.* The second is when an employer has an "openly espoused" policy of discrimination. *Id.* Finally, the "[t]hird continuing violation theory stems from cases in which 'the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy.'" *Id.* (quoting *Stewart v. CPC Int'l, Inc.,* 679 F.2d 117, 121 (7th Cir.1982)). In this case, it appears that plaintiffs rely on the first and third theories, since they do not allege that Abbott has an "openly espoused" policy of discrimination.

The first theory excuses failure to sue within the limitations period if the plaintiff did not know, or would not have known through the exercise of reasonable diligence, that he was injured. *See Moskowitz v. Trustees of Purdue Univ.,* 5 F.3d 279, 282 (7th Cir.1993). As the Seventh Circuit has stated, "the purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts, whose character as discriminatory

acts was not apparent at the time they occurred." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994).

■ To begin, plaintiffs' complaint fails to allege specific instances when Payne was denied promotions. Plaintiffs merely allege that Abbott engaged in a continuing pattern of failing to promote and provide opportunities for promotion to African–American employees. This alone militates against application of the continuing violation doctrine. A blanket assertion that the denial of promotion continued until Payne's termination is not sufficient to toll the statute of limitations. "Mere continuity of employment, without more, is, insufficient to prolong the life of a cause of action for employment discrimination." *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980); *Kelly v. City of Chicago*, 4 F.3d 509, 512 (7th Cir.1993). By not alleging specific instances when Payne was denied promotion, plaintiffs' complaint does not establish a factual basis for the application of the continuing violation doctrine. *See Saldana v. City of Chicago*, 972 F.Supp. 453, 455 (N.D.Ill.1997) (holding that factual basis for continuing violation doctrine must be pleaded in the complaint).

Payne argues that he was not aware of Abbott's discriminatory policies until he was terminated and replaced by a less qualified white employee. However, the allegations of the complaint are to the contrary. In his EEOC charge, which is attached to the Amended Complaint, Payne alleges that on "several occasions" prior to his termination from Abbott, he "brought to the attention of [his] superiors the fact that minority employees of Abbott Laboratories, Ross Products Division, have not and do not receive the same treatment or consideration in promotional opportunities, management positions and other employment benefits that white male employees receive." Amend. Comp., Ex. A. Payne's complaints about the treatment of minorities at Abbott evidence his awareness of Abbott's discriminatory policies prior to his termination. *See Keesecker v. H.B. Fuller Co.*, No. 93 C 3671, 1993 WL 401906, at *2 (N.D.Ill. Oct.7, 1993) (plaintiff's internal complaints of sexual harassment demonstrated an awareness that her rights may have been violated). Plaintiff's signa-

ture is on the EEO–1 Reports attached to the complaint, indicating that plaintiff was aware that African–Americans were under represented in Abbott's management. Coupled with Abbott's failure to promote him, the complained of conduct in these reports should have put Payne on notice of Abbott's discriminatory actions. *See Moskowitz*, 5 F.3d at 281–82 (stating that if plaintiff "knows or with the exercise of reasonable diligence would have known with each act that it was discriminatory and had harmed him, he may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one").

Plaintiffs also argue that it is improper for the court to dismiss their claims at this point since whether Abbott's conduct constituted a continuing violation is a question of fact. The court disagrees. If the factual allegations of a complaint are insufficient to form the basis of tolling the statute of limitations based on the continuing violation doctrine, courts routinely dismiss plaintiff's complaint as untimely. *See Saldana*, 972 F.Supp. at 455 (N.D.Ill.1997); *Zewde v. Elgin Community College*, 601 F.Supp. 1237, 1241 (N.D.Ill. 1984). Therefore, equitable tolling is not justified under the first theory.

■ Alternatively, the third basis for applying the continuing violation doctrine requires plaintiff to show that the acts of discrimination are more accurately viewed as part of one continuous course of conduct. A series of separate violations is treated as a continuing violation if " 'plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discrimination.' " *Selan*, 969 F.2d at 565–66 (*quoting Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989)). In making this determination, the court considers three factors: (1) the relatedness of the subject matter of the acts; (2) the frequency of the acts; and (3) the degree of permanence. See *Id.* at 565 (citing *Berry v. Board of Sup'rs of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983)).

With these factors in mind, the court finds the instant case inappropriate for application of the continuing violation theory. First, the

time-barred acts, which were denials of promotion are dissimilar in subject matter to Payne's termination. In *Selan*, the court stated that this factor is not satisfied by allegations that different violations were motivated by the same discriminatory purpose. *Id.* at 566. Instead, plaintiff must allege violations involving the same type of adverse action. *Id.* Termination and promotion do not involve the same type of action. *See Albano v. Schering–Plough Corp.*, 912 F.2d 384, 386 (9th Cir.1990) (constructive discharge claim is not like or reasonably related to a charge of discrimination in promotion); *Carter v. City & Cty. of San Francisco*, No. C 94–4246, 1996 WL 346887, at *4 (N.D.Cal. June 19, 1996) (termination and promotion are not related acts); *Hershey v. Praxair*, 948 F.Supp. 29, 32 (S.D.Tex.1996) (promotion and salary decisions "were distinct acts separate and apart from the termination decision, albeit based on the same type of alleged discrimination").

The second factor, the frequency of the conduct, also does not weigh in plaintiffs' favor. The complaint alleges that Payne was laterally moved without a pay raise in March, 1992 and October, 1994. Assuming these are the instances when Payne was denied promotion, seventeen months then elapsed before Payne was terminated in March, 1993. Because these acts were infrequent and irregular, they are more correctly viewed as isolated employment decisions, not a continuing pattern of discrimination. *See Selan*, 969 F.2d at 567 (holding that two year separation between acts weighs heavily against finding a continuing violation); *Keesecker v. H.B. Fuller*, No. 93 C 3671, 1993 WL 401906, at *2 (N.D.Ill.Oct.7, 1993) ("[T]he large separation in time between events in 1990 and plaintiff's discharge in 1992 is persuasive evidence that the discrimination was not continuing.").

The third factor, the degree of permanence, is the most significant. *Selan*, 969 F.2d at 565. The issue is whether the time-barred acts had the degree of permanence to trigger the employees awareness that he was injured. Simply put, the court asks whether it would have been unreasonable to require plaintiff to sue on each one separately. *Malhotra v. Cotter & Company*, 885 F.2d 1305, 1310 (7th Cir.1989). To begin, decisions not to promote are generally considered to be

discrete actions, with a significant degree of permanence, that should alert an individual of a possible claim. *See Jones v. Merchants Nat'l Bank & Trust Co., of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir.1994) (finding no continuing violation where plaintiff was denied various promotions and where "each promotion was a discrete decision and each time [plaintiff] knew, or should have known, that she had not received the promotion and another person had"); *Zewde*, 601 F.Supp. at 1243 (N.D.Ill.1984) (promotion denials were discrete decisions). Consequently, even if the court assumes that Payne was denied promotions when he was laterally moved without a pay raise—an allegation plaintiffs do not explicitly make—each of these denials of promotion were of a permanent nature. Any failure to promote should alert plaintiff to his injury. Accordingly, the continuing violation doctrine does not revive Payne's stale discrimination in promotion and pay claims.

■ Since Payne's failure to promote claims are time-barred, he cannot represent the alleged class. If the named plaintiff does not file a timely EEOC charge, the other potential class action members cannot rely on that untimely charge to support their claims. *Banas v. American Airlines*, 969 F.2d 477, 482–83 (7th Cir.1992); *see also Robinson v. Sheriff of Cook County*, No. 95 C 2205, 1996 WL 417559, at *2 (N.D.Ill. July 22, 1996) ("[C]lass action lawsuits brought under Title VII must be prosecuted by named plaintiffs who have satisfied the filing requirements prescribed by Title VII.") In this case, the class is identified in the complaint as those similarly situated to Payne, the sole named plaintiff, who have been "denied employment opportunities such as equal consideration for management level positions and promotions, desirable job assignments, training and equal treatment and consideration in employment compensation and benefits." Amend.Compl. ¶ 11. Since only Payne's termination claim remains, he cannot represent the class. Thus, plaintiffs' class action claims as to Count I are stricken. Plaintiffs are given one month to file a new amended complaint, proposing as the named class representative someone who has unquestionably complied

with the statutory filing requirements of Title VII.

### § 1981 CLAIM

In Count II, plaintiffs allege that Abbott intentionally discriminated against the seven named plaintiffs, and all others similarly situated, on the basis of race in violation of 42 U.S.C. § 1981, which "protects against discrimination on the basis of race or alienage." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1232 (7th Cir.1984). To state a claim under § 1981, plaintiffs must allege that: (1) they are members of a racial minority; (2) the defendant intentionally discriminated against them on the basis of race; (3) the discrimination concerned one or more of the rights enumerated in the statute. *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993).

In order to survive a motion to dismiss, plaintiffs cannot plead intentional discrimination in a conclusory fashion. They must plead sufficient facts to show or raise a plausible inference that the defendant purposefully discriminated against them because of their race. *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir.1982) (plaintiff "must allege some facts that demonstrate that his race was the reason" for the defendant's actions); *Davis v. Frapolly*, 747 F.Supp. 451, 452 (N.D.Ill.1989) ("A mere conclusory allegation of intentional discrimination is insufficient" under § 1981.) This burden may be satisfied by allegations showing direct evidence of discrimination, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or through the indirect, burden-shifting method first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Since plaintiffs do not allege any direct evidence of discrimination, they must plead the elements of the prima facie case of discrimination, which are essentially identical to those under Title VII. To establish a prima facie case of discrimination in failure to promote, plaintiffs must plead: (1) that they are members of a protected class; (2) they applied for and were qualified for the positions sought; (3) they were rejected for the positions; and (4) the promotion was given to someone of a different race. *Sample v. Aldi*, 61 F.3d 544, 547 (7th Cir.1995). Further, to establish a prima facie case of race discrimination, plaintiffs must allege: 1) that they are members of a protected group; 2) they were performing their job consistent with their employer's legitimate business expectations; 3) they suffered an adverse employment action; and 4) similarly situated white employees were treated more favorably. *Oates v. Discovery Zone*, 116 F.3d 1161, 1170 (7th Cir.1997).

In the instant case, plaintiffs' allegations fail to a state a claim under § 1981. The complaint alleges in a conclusory manner that plaintiffs were denied promotional opportunities and equal pay. However, with regard to the seven named plaintiffs, the complaint does not allege specific instances or facts regarding when plaintiffs applied for promotions, when positions at Abbott became available for plaintiffs to fill, or other specific adverse employment actions which injured plaintiffs. The complaint merely details the employment histories of the various plaintiffs, but does not provide any specific facts from which the court can ascertain whether the plaintiffs' action is timely or states a claim. Although notice pleading is all that is required in federal court, " 'some particularized facts demonstrating a constitutional violation are needed to sustain a cause of action under the Civil Rights Act.' " *Jafree*, 689 F.2d at 643 (quoting *Cohen v. Illinois Inst. of Tech.*, 581 F.2d 658, 663 (7th Cir.1978)); *see also Jones v. Michael Reese Hosp.*, No. 90 C 7027, 1991 WL 105583, at *4 (N.D.Ill. June 7, 1991) (dismissing § 1981 case where plaintiff failed to allege that she was qualified for the promotion sought); *Davis*, 747 F.Supp. 451, 452 (dismissing § 1981 claim where the allegations were conclusory).

Abbott argues that some of plaintiffs' claims are time-barred. Section 1981 constitutional claims must be brought within two years from the accrual of the injury. *Smith v. City of Chicago Heights*, 951 F.2d 834, 836 (7th Cir.1992). The accrual date is not necessarily the date that plaintiff actually was injured; rather, it is the date that plaintiff discovered his injury. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990). Here, the complaint does not allege sufficient facts for the court to deter-

mine when plaintiffs discovered their injury. Plaintiffs conclusory allegations are not sufficient to support a claim of discrimination.

Further, plaintiffs' complaint appears to rely exclusively on the Glass Ceiling Study and Abbott's EEO–1 Reports as support for its claim. Although these reports may provide evidence that Abbott's policies have a disparate impact on African–American employees, they do not show evidence of intentional discrimination. Since only intentional, purposeful discrimination constitutes a violation of § 1981, proof of disparate impact does not support § 1981 liability. *Mozee v. American Comm. Marine Serv. Co.*, 940 F.2d 1036, 1047 (7th Cir.1991); *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835(1982). Therefore, plaintiffs fail to state a claim under § 1981.

### TRANSFER

Lastly, defendant argues, that in the event that all the claims are dismissed except Payne's individual claims under Title VII, these claims should be transferred to the Southern District of Ohio. Since the court has provided plaintiffs with the opportunity to propose a new named class representative in support of its Title VII claim, Abbott's motion for transfer is denied without prejudice at this juncture. Abbott may renew its motion when appropriate.

### CONCLUSION

In conclusion, defendant's motion to dismissal is granted. As to Count I, plaintiff Payne's claims of discrimination in promotion and pay are dismissed as time-barred; Payne's individual discrimination in termination claim remains. Accordingly, plaintiffs' class action claims as to Count I are stricken. Plaintiffs are given one month from the date of the entry of this order to file an amended complaint, proposing as the named class representative someone who has unquestionably complied with the statutory filing requirements of Title VII. As to Count II, plaintiffs claims are dismissed. Additionally, defen-

dant's motion for transfer is denied without prejudice.

**IT IS SO ORDERED.**