**TRUSTEES OF the PENSION, WELFARE AND VACATION FRINGE BENEFIT FUNDS OF IBEW LOCAL 701, Plaintiff–Appellant,**

v.

**FAVIA ELECTRIC COMPANY, INCORPORATED, also known as T & M Electric, also known as Tom's Electric, Thomas Miniscalco, individually, et al., Defendants–Appellees.**

No. 92–2090.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1992.

Decided June 16, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 20, 1993.

L. Steven Platt, Steven F. McDowell (argued), Arnold & Kadjan, Chicago, IL, for plaintiff-appellant.

John J. Casey (argued), Chicago, IL, Riccardo A. DiMonte, DiMonte & Lizak, Park Ridge, IL, for defendants-appellees.

Before CUDAHY and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The trustees of the International Brotherhood of Electrical Workers ("IBEW") Local 701 pension, welfare and vacation fringe benefit funds (the "Benefit Funds") sued the defendants for nonpayment of pension contributions. The trustees now appeal the district court's entry of judgment in favor of all defendants, issued after a bench trial. On appeal, the trustees assert two potential sources of liability: (1) the single employer doctrine, and (2) the alter ego doctrine. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291. We affirm.

## I.

The trustees named the following as defendants in their pension contribution suit: Favia Electric Company, Inc. ("Favia Electric"), also known as T & M Electric, as well as individuals Thomas Miniscalco, Mary Ann Miniscalco ("Thomas" and "Mary Ann"; collectively, the "Miniscalcos") and Michael Favia[1] ("Favia") as defendants in this pension contribution suit. Events relevant to this controversy began on July 24, 1982, when Thomas started doing business as Tom's Electric, a non-union sole proprietorship. Favia Electric had a contractor's license and Thomas did not. Therefore, during the next two years, Thomas repeatedly used the name of Favia Electric, which had not performed electrical work itself for several years, in applications for building permits.

This practice continued until June 1, 1984, when the Miniscalcos entered into a licensing agreement with Favia, the sole owner of Favia Electric, for the use of Favia Electric's corporate name. The Miniscalcos hoped that the use of the Favia Electric name and its affiliation with a large electrical supply store would bring them additional business. The licensing agreement also included an option to buy Favia Electric. At the same time the licensing agreement was executed, Mary Ann was elected president and sole director of Favia Electric. Both Tom's Electric and Favia Electric continued operations, and each was required to pay Favia ten percent of its gross billings. Both businesses employed the same two individuals, Thomas and George Anderson. In addition, Thomas formulated contract bids for both businesses. On the other hand, the businesses kept separate books, bank accounts and equipment.

Under a collective bargaining agreement, Favia Electric was obligated to contribute to the Benefit Funds. Mary Ann, as president of Favia Electric, made pension contributions on work Thomas performed as Favia Electric. Tom's Electric, having never entered into a collective bargaining agreement with the IBEW, did not make contributions to the Benefit Funds. During the pendency of the

1. Michael Favia was later dismissed as a defendant by stipulation.

licensing agreement, work from newly acquired customers was considered to be Favia Electric work, while work from pre-existing customers was assigned to the business that had done the prior work.

Thomas testified that throughout the effective period of the licensing agreement, the use of the Favia Electric name did not bring in any additional customers. For this reason, the Miniscalcos terminated the licensing agreement with Favia Electric as permitted by its terms on July 31, 1985. At that time, Mary Ann resigned as president of Favia Electric, and Thomas also ceased doing business as Tom's Electric. On August 1, 1985, the Miniscalcos started T & M Electric. Like Tom's Electric, T & M Electric has never entered into a collective bargaining agreement with the IBEW. Since T & M Electric came into existence, it has performed work for nine customers who previously employed Favia Electric. In addition, T & M Electric has performed work for over thirty customers of its own.

■ The trustees sued the defendants, in an attempt to establish liability for contributions to the Benefit Funds under the following theories: (1) the single employer doctrine, (2) the alter ego doctrine and (3) the successorship doctrine. The district court addressed the question of liability separately for each of three time periods: (1) July 24, 1982 to May 31, 1984, when Thomas was operating Tom's Electric, (2) June 1, 1984 to July 31, 1985, when the licensing agreement was in force, and (3) August 1, 1985 to June 30, 1987, the remaining portion of the union audit period, when T & M Electric was in operation. After a bench trial, the district court entered judgment in favor of all defendants for each of the time periods. In this appeal, the trustees challenge the district court's decision regarding the latter two time periods,[2] reasserting the single employer and alter ego doctrines.[3]

## II.

■ The district court entered its judgment after a bench trial. When a case is tried to the bench, we review the court's findings of fact under a clearly erroneous standard and the court's legal conclusions *de novo*. *Selan v. Kiley*, 969 F.2d 560, 567 (7th Cir.1992). The trustees assert two doctrines that each contain several fact-based factors; therefore, determining whether defendants should be held liable under either is a fact-intensive inquiry. As such, we review the district court's determinations for clear error. Fed.R.Civ.P. 52(a).[4] With this stan-

2. Counsel for the trustees stated at oral argument that they chose not to appeal the first time period and did not brief that time period before this Court.

3. The successorship doctrine was expressly waived as a theory of liability in the trustees' brief for the period that T & M Electric was in operation, August 1, 1985 to June 30, 1987. The trustees' brief states:

> Because this case was a disguised continuation of a former business rather than a bona fide sale of the business' assets and because the applicable labor contracts do not contain a "successor or assigns" clause, the Trustees do not rely upon the successorship doctrin [sic] as a mans [sic] to bind T & M to the labor agreement.

(Trustees' Br. at 39 n. 13.)

Also, the trustees did not mention the successorship doctrine as a theory of liability for the June 1, 1984 to July 31, 1985 period in their brief. This omission is appropriate given that Tom's Electric and Favia Electric can in no sense be considered successors of each other during this period. Failure to fully brief an issue consti-

tutes waiver of that issue. *United States v. Papia*, 910 F.2d 1357, 1363 (7th Cir.1990) (holding that an appellant must present an argument accompanied by relevant authority in order to preserve a claim on appeal). Therefore, we consider the successorship doctrine waived.

4. The trustees argue that the district court made errors of law in its application of the factors from these doctrines, pointing out that "[r]ule 52(a) does not inhibit an appellate court's power to correct errors of law, including those that may infect a so-called mixed finding of law and fact, or a finding of fact that is predicated on a misunderstanding of the governing rule of law." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 501, 104 S.Ct. 1949, 1960, 80 L.Ed.2d 502 (1984). The district court's understanding of the law was not in error, however. Therefore, we review its findings under the clearly erroneous standard. Furthermore, the district court's findings would also survive the "more searching" standard of review for determinations that depend on or incorporate a rule of law. *See Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1269-70 (7th Cir.1991).

dard in mind, we begin by analyzing the first of the doctrines asserted by the trustees.

## A. The Single Employer Doctrine

■ The trustees argue that the defendants should be held liable under the single employer doctrine, attempting to apply it to only the June 1, 1984 to July 31, 1985 period. To determine whether two nominally separate business entities are a single employer, one must examine four factors set out by the Supreme Court: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *South Prairie Constr. Co. v. International Union of Operating Engineers*, 425 U.S. 800, 803, 96 S.Ct. 1842, 1843, 48 L.Ed.2d 382 (1976); *Radio and Television Broadcast Technicians Local Union v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965). No one of these factors is conclusive; instead, the decisionmaker must weigh the totality of the circumstances. *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 753 (7th Cir.1989).

■ Some interrelation of operations existed between Tom's Electric and Favia Electric during the June 1, 1984 to July 31, 1985 period. Both businesses performed the same type of work with an identical work force, typically working four days a week as Favia Electric and one day as Tom's Electric. The two businesses maintained separate records and bank accounts, however. Though Thomas and Mary Ann apparently did not make use of them, Favia Electric also maintained separate equipment and a separate phone number. On balance, the two businesses did not demonstrate a high degree of interrelation of operations.

As to common management, the two businesses had at least nominally separate management. Thomas was the sole proprietor of Tom's Electric, while his wife Mary Ann was Favia Electric's president during this period. Mary Ann was not simply a figurehead; instead, she was active in filing annual reports and paying taxes for Favia Electric. The fact that Thomas managed the work sites for both businesses was not sufficient to destroy the separateness of management.

Third, we consider the degree to which there was centralized control of labor relations. The trustees correctly point out that Thomas hired and supervised George Anderson, the sole employee besides himself, for both businesses. On the other hand, however, Mary Ann handled the bulk of the paperwork for Favia Electric's dealings with the IBEW. Therefore, though this factor provides some support for a finding that Tom's Electric and Favia Electric were a single employer, that support is not unequivocal.

Finally, the two businesses were not commonly owned. Neither Thomas nor Mary Ann ever held any stock in Favia Electric. Though the licensing agreement included an option for the Miniscalcos to purchase Favia Electric, it was never exercised. Therefore, this factor stands strongly against the imposition of single employer liability.

In sum, though there are some indicia that the single employer doctrine may apply, the Miniscalcos attempted to respect corporate formalities to the extent possible. After examining the factors in this "totality of the circumstances" determination, we cannot say that the district court erred in finding that Tom's Electric and Favia Electric were not a single employer.

## B. The Alter Ego Doctrine

■ The trustees next argue that the defendants should be held liable under the alter ego doctrine for both the June 1, 1984 to July 31, 1985 period and the August 1, 1985 to June 30, 1987 period. Both periods involve the same questions regarding evasion of obligations under the labor laws. This Circuit discussed the alter ego doctrine in *Esmark, Inc. v. N.L.R.B.*, stating that

[t]he Board's "alter ego" doctrine is similar [to the single employer doctrine]: generally, one corporation is the alter ego of another where the factors necessary to support a "single employer" finding are met and, in addition, the Board finds that the second corporation is a "disguised continuance" of the employing enterprise, resulting in evasion of the employer's obligations under the labor laws.

887 F.2d 739, 754 (7th Cir.1989). Meeting all of the elements of the single employer doctrine is not essential to a finding that the alter ego doctrine applies, however. For example, an alter ego relationship has been found to exist "even though no evidence of actual common ownership was present." *Central States Pension Fund v. Sloan*, 902 F.2d 593, 597 (7th Cir.1986) (citations and internal quotation marks omitted). Thus, the district court's rejection of the single employer doctrine did not preclude the application of the alter ego doctrine. What is essential for the application of the alter ego doctrine, though, is a finding of "the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets. In sum, unlawful motive or intent are critical inquiries in an alter ego analysis...." *Int'l Union of Operating Engineers v. Centor Contractors*, 831 F.2d 1309, 1312 (7th Cir.1987) (citations omitted).

Regarding the June 1, 1984 to July 31, 1985 period, the district court found that there was "no evidence whatsoever that either of the Miniscalcos entered into the relationship with Favia for the purpose of obtaining any union benefits or for the purpose of depriving the union or the pension funds of any benefits to which they were entitled." (R. 143–407.) The Miniscalcos were seeking to improve their business prospects through the use of the goodwill they believed was associated with the Favia Electric name. When the agreement was executed, Favia Electric did not have any customers. Favia Electric did obtain customers during the pendency of the licensing agreement, but the district court credited Thomas' testimony that these new customers were obtained through his efforts rather than the goodwill of Favia Electric. While the licensing agreement was in effect, all work from newly-acquired customers was considered to be Favia Electric work and all required contributions to the Benefit Funds were made on that work. The district court correctly found that the Benefit Funds would not have received any contributions in the absence of Thomas' efforts. Far from attempting to evade union obligations, the Miniscalcos were breathing life into a defunct union contractor and making Benefit Fund contributions that would not have otherwise been made. Therefore, the district court correctly found that the unlawful motive or intent necessary for the application of the alter ego doctrine was not present during this period.

Regarding the August 1, 1985 to June 30, 1987 period, the district court similarly found that there was "no evidence to support the argument that Tom Miniscalco ceased his relationship with Favia or that Mary Ann Miniscalco ceased her relationship with Favia for the purpose of avoiding obligations to the welfare funds or to the union." (R. 143–410.) When the Miniscalcos realized that their use of the Favia Electric name was not benefitting them, they terminated their relationship as permitted by the licensing agreement. Because the Miniscalcos' decision to terminate the relationship was motivated by valid business concerns and not an intent to avoid union obligations, the district court correctly found that the alter ego doctrine did not apply to this period.

### III.

Because neither the single employer doctrine nor the alter ego doctrine serve to impose liability on any of the defendants, we conclude that the district court was correct to enter judgment in their favor; therefore, the district court's judgment is AFFIRMED.