**Dana HOFFMAN–DOMBROWSKI,**
**Plaintiff,**

v.

**ARLINGTON INTERNATIONAL RACECOURSE, INC.,**
**Defendant.**

**No. 98 C 1525.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 30, 1998.

---

John P. De Rose, Kenneth A. Jatczak, Anthony T. Capua, John P. De Rose & Associates, Chicago, IL, for Plaintiff.

Brenda H. Feis, Kristin Jones Pierre, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

This matter comes before this court on a motion filed by defendant Arlington International Racecourse to strike plaintiff Dana Hoffman–Dombrowski's first amended complaint pursuant to Federal Rule of Civil Procedure 12(f). The court will construe this as a motion to strike only the time-barred allegations. The court grants defendant's motion to strike for the reasons outlined below.

### I. *BACKGROUND*

Plaintiff Dana Hoffman–Dombrowski ("Dombrowski") alleges the following facts in her complaint. Dombrowski began employment with defendant Arlington International Racecourse ("Arlington") in June of 1980. She is currently an assistant manager and part of her job responsibilities include training employees. Throughout her employment, Dombrowski was promised promotions to positions for which she was qualified, but which were instead given to nine white male employees, all of whom Dombrowski had trained.

In June of 1996, Dombrowski was denied a promotion to the position of General Manager which was promised to her by the Arlington Vice President Robert Bork. The position was instead filled by Scott Lager, a male with less experience and qualifications than Dombrowski. In hiring Lager, who had not worked for Arlington prior to his becoming General Manager, Arlington violated their policy of promoting from within the company. When Dombrowski inquired as to Lager's lack of experience, she was informed that Lager had been training for weeks at the defendant's Waukegan, Illinois location. Dombrowski alleges that Lager actually received less than a day of training for the General Manager position.

After Dombrowski had been passed over for the General Manager position, she met with the Human Resource Director Linda Kica. At that meeting, Dombrowski expressed her concerns about being passed over for the management position and she raised the subject of possible gender discrimination. Dombrowski then met with Chief Executive Officer ("CEO") Scott Mordell where she voiced her concerns about being passed over for the promotion and again raised the subject of gender discrimination. Mordell told Dombrowski that gender did not play a part in the promotion of Lager and assured her that, if she would train Lager for the position of General Manager, she would then become the Assistant General Manager. Relying on this promise, Dombrowski trained Lager during which time Lager also promised to promote Dombrowski to a position as his assistant. The position of Assistant General Manager, however, remained vacant through 1996 and most of 1997.

Dombrowski alleges that after expressing her concerns about possible gender discrimination, her supervisors began to retaliate against her. On August 23, 1997, Lager issued a verbal and later a written warning to Dombrowski for talking with a customer in her office during her lunch hour, which is not a violation of company policy. On October 10, 1997, Lager informed Dombrowski that her work schedule was being changed and she would now have to be to work at 8:00 a.m. rather than 9:00 a.m. Dombrowski informed Lager that she may be a little late on the following Monday due to day care problems and Lager advised her that that would be alright. On Monday, October 13, 1997, Dombrowski arrived for work at 8:08 a.m. The next day, Lager informed Dombrowski that he would be writing her up for being late. Dombrowski inquired as to why she was suddenly being reprimanded so often. Lager responded that Dombrowski should consider warming up to James Stumpf, the

vice president of off track betting for Arlington. Lager advised Dombrowski to "have lunch or stop for drinks with Stumpf so you can improve your relationship with him."

On October 15, 1997, Dombrowski was called into a meeting with Lager, Kica and Stumpf. Stumpf informed Dombrowski that she was immediately being transferred to the defendant's Waukegan facility. The Waukegan facility is located in a more dangerous area than the Arlington facility and Dombrowski alleges that the Waukegan facility will likely close down within the next year. As Dombrowski was being escorted from the Arlington facility on October 15, Lager told her that she was lucky to be getting a second chance and that she should consider quitting. That same day that Dombrowski was transferred, the vacant Assistant General Manager position was given to a male employee who Dombrowski had trained.

On October 17, 1997, Dombrowski sent an electronic message ("e-mail") to Mordell requesting her personnel file. Shortly after her request, Dombrowski was advised that she was no longer allowed to use the e-mail system. Later that same month, Dombrowski was asked to appear as a witness at an arbitration hearing at the Arlington facility. Although Dombrowski was assured that her child care payment for the day would be reimbursed, she did not receive payment.

On November 12, 1997, Dombrowski again met with Mordell to discuss her concerns about possible gender discrimination. Dombrowski alleges that on November 16, 1997, Arlington began to take actions against Dombrowski's family members who worked for Arlington. Dombrowski's sister's seniority position was lowered, her father's work assignment was changed and her cousin lost several of his work shifts each week. On November 19, 1997, Stumpf called the General Manager at the Waukegan facility, Joseph Scalamogna, and made unprofessional remarks about Dombrowski. Stumpf instructed Scalamogna to document everything that Dombrowski did wrong and to "mess with her schedule." Scalamogna eventually reported Stumpf's attempts to retaliate against Dombrowski to his supervisor.

On December 3, 1997, Dombrowski filed a charged of gender discrimination against Ar-

lington with the Equal Employment Opportunity Commission ("EEOC"). The charge included discriminatory actions taken against Dombrowski beginning in June of 1996 through November 1997. The EEOC issued Dombrowski a notice of right-to-sue letter on December 17, 1997.

On March 13, 1998, Dombrowski filed a complaint against Arlington alleging gender discrimination and retaliation in violation of Title VII. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. *DISCUSSION*

On May 1, 1998, Arlington filed a partial motion to dismiss the complaint because it asserted time-barred allegations. By an Order dated May 5, 1998, this court granted Arlington's motion to dismiss and granted Dombrowski leave to replead only the timely allegations concerning events occurring after February 6, 1997. On May 19, 1998, Dombrowski filed her first amended complaint which did not exclude the time-barred allegations. Arlington now moves to strike Dombrowski's first amended complaint pursuant to Federal Rule of Civil Procedure 12(f).

### A. *Rule 12(f) motion to strike*

Rule 12(f) allows a court to order stricken from any pleading "any insufficient defense or redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Motions to strike, however, are disfavored and will usually be denied. *Tatum v. Davis*, No. 95 C 1241, 1996 WL 388405, at *1 (N.D.Ill. July 9, 1996). In order for the court to grant the motion, the defendant must demonstrate that "the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration" and that the allegations are unduly prejudicial. *Trustmark Life Ins. Co. v. University of Chicago Hosps.*, No. 94 C 4692, 1996 WL 68009, at *1 (N.D.Ill. Feb.14, 1996). Prejudice results where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party. *VPHI, Inc. v. National*

*Educ. Training Group, Inc.,* No. 94 C 5559, 1995 WL 51405, at *3 (N.D.Ill. Jan. 20, 1995).

Arlington argues that the amended complaint should be stricken and that Dombrowski be ordered to comply with this court's May 5, 1998 Order. Dombrowski argues that Arlington's motion to strike the complaint should be denied for two reasons. First, she argues that the allegations which occurred prior to February 6, 1997 are not time-barred because of the continuing violation theory. In the alternative, Dombrowski argues that the doctrine of equitable estoppel precludes Arlington from alleging that the complaint is time-barred. The court will address each of these arguments in turn.

### B. *Continuing violation doctrine*

Arlington contends that Dombrowski is barred from basing her Title VII claims on any acts which occurred more than 300 days before the date on which she filed her EEOC charge, December 3, 1997. Thus, according to Arlington, Dombrowski cannot bring her claims based on acts which took place before February 6, 1997.

Arlington is correct that a plaintiff in Illinois must file an EEOC charge within 300 days of the occurrence of the act which is the basis for the charge, and that failure to do so renders the charge untimely. *Koelsch v. Beltone Elec. Corp.,* 46 F.3d 705, 707 (7th Cir. 1995). However, Dombrowski argues for the first time in her response to defendant's motion to strike that this limitation period is subject to equitable tolling under the "continuing violation doctrine."

■■■ The continuing violation doctrine allows a plaintiff to base a claim on a time-barred act by linking the time-barred act with an act that is within the limitations period. *See Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992). A plaintiff invoking this doctrine must show that the alleged acts of discrimination were part of an ongoing pattern of discrimination and that at least one of the alleged acts of discrimination occurred within the relevant limitations period. *Young v. Will County Dept. of Public Aid,* 882 F.2d 290, 292 (7th Cir.1989). "[T]he purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred." *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 446 (7th Cir.1994).

Under the continuing violation doctrine, if Dombrowski alleges acts of discrimination that occurred prior to February 6, 1997, but those acts were part of an ongoing pattern of discrimination by Arlington and at least one discriminatory act occurred after February 6, 1997, Dombrowski can base her Title VII claims on the alleged acts of discrimination occurring both prior and subsequent to February 6, 1997. The court must now consider whether Dombrowski can establish that Arlington's alleged actions were a continuing violation.

■■■ A plaintiff may establish a continuing violation under three scenarios. First, usually in cases involving hiring or promotion practices, "the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred." *Selan,* 969 F.2d at 565. Second, "the employer has an express, openly espoused policy that is alleged to be discriminatory." *Id.* Third, "the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy .... In such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory, acts." *Id.*

Dombrowski's complaint most appropriately falls under the third scenario. Under this theory, the statute of limitations begins to run when the plaintiff learns he is a victim of unlawful discrimination. *Morgan v. Ponderosa, Inc.,* No. 97 C 4549, 1998 WL 325213, at *8 (N.D.Ill. June 9, 1998). If Dombrowski knew, or with the "exercise of reasonable diligence would have known" after each act that it was discriminatory and that she had been harmed, she must sue over that act within the limitations period. *Lacy v. Ameritech Mobile Communications,* 965 F.Supp. 1056, 1065 (N.D.Ill.1997).

The Seventh Circuit considered this same argument in a race discrimination suit against an employer for failing to promote an African–American employee. *See Jones v. Merchants Nat'l Bank & Trust Co.,* 42 F.3d

1054 (7th Cir.1994). Like Dombrowski, the plaintiff's claim was based on more than one alleged acts of nonpromotion that occurred throughout her employment. The district court found that acts of nonpromotion are held to be the sorts of discrete and permanent actions that should cause an employee to sue separately and therefore the court held all of the acts of nonpromotion except one were time-barred. *Jones v. Merchants Nat'l Bank & Trust Co.*, No. IP 91–346 C, 1992 WL 695028, at *8 (S.D.Ind. Nov.17, 1992). The plaintiff appealed, arguing that all of the defendants alleged discriminatory actions were part of a continuing violation. The Seventh Circuit rejected the plaintiff's argument, holding that the plaintiff knew, or should have known, that each act of nonpromotion was discriminatory and had caused her harm. *Jones*, 42 F.3d at 1058.

■ With respect to Arlington's alleged act of nonpromotion, Dombrowski was aware that a white male employee was promoted in her place. In her complaint, Dombrowski admitted that she believed that Arlington's first act of not promoting her was discriminatory. Moreover, the 1996 act of nonpromotion was a discrete decision of which Dombrowski was aware. Accordingly, she cannot rely on the continuing violation doctrine to link the time-barred 1996 act of nonpromotion with the 1997 act to satisfy the 300 day limitation period.

## C. *Equitable estoppel*

Dombrowski next argues that the doctrine of equitable estoppel precludes Arlington from pleading a statute of limitations defense. For the reasons outlined below, this argument fails.

■ Equitable estoppel tolls the statute of limitations when an employee's untimely filing was the result of "a deliberate design by the employer of actions that the employer should have unmistakenly understood would cause the employee to delay filing his charge." *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 292 (7th Cir.1986). Equitable estoppel requires that "the defendant takes active steps to prevent the plaintiff from suing in time, ... such as by hiding evidence or promising not to plead the statute of limitations." *Thelen v. Marc's Big*

*Boy Corp.*, 64 F.3d 264, 267 (7th Cir.1995). The defendant's conduct must be aimed at accomplishing a delay in filing. Thus, acts that are merely designed to mitigate the adverse impact of the employment do not justify the granting of equitable estoppel. *Mull*, 784 F.2d at 292.

■ Dombrowski alleges that, after she was passed over for promotion, Arlington CEO Mordell denied any gender discrimination and told her that "things will definitely come your way." While a plaintiff is entitled to all reasonable inferences that can be drawn from the complaint's allegations, the court is not required to strain to find favorable inferences that are not apparent on the face of the complaint. *Bright v. Roadway Servs., Inc.*, 846 F.Supp. 693, 699 (N.D.Ill. 1994). The reasonable inference from Dombrowski's allegation is that Mordell's comments were an attempt to alleviate the adverse impact of passing Dombrowski over for the promotion to General Manager, rather than an attempt to prevent Dombrowski from filing a charge with the EEOC. As previously mentioned, equitable estoppel does not apply in such a case. *See Mull*, 784 F.2d at 292. Accordingly, the doctrine of equitable estoppel will not preclude Arlington from pleading a statute of limitations defense.

## III. *CONCLUSION*

For the foregoing reasons, the court grants defendant's motion to strike Dombrowski's time-barred allegations in her first amended complaint pursuant to Federal Rule of Civil Procedure 12(f). Dombrowski cannot base her Title VII claims on acts which occurred and of which Dombrowski was or should have been aware prior to February 6, 1997. Dombrowski is granted leave to file a second amended complaint consistent with this Order. Dombrowski is given until August 17, 1998 to file a second amended complaint. Defendant is given to August 24, 1998 to respond to the second amended complaint.