Dana HOFFMAN–DOMBROWSKI,
Plaintiff,

v.

ARLINGTON INTERNATIONAL
RACECOURSE, INC.,
Defendant.

No. 98 C 1525.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 14, 2000.

John P. DeRose, Kenneth A. Jatczak, Anthony T. Capua, John P. DeRose & Associates, Burr Ridge, Illinois, for plaintiff.

Brenda H. Feis, Paul R. Brockmeyer, Kristin James Pierre, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Illinois, for defendant.

1. Unless otherwise indicated, the following facts are taken from the parties' Local General Rule 12(M) and 12(N) Statements. *See infra* Part II.A (addressing the impact of Arlington's failure to comply with Local General Rule 12 on the court's determination of the undisputed facts). Since the time of the filings of the briefs for this motion, the court has renamed and renumbered Local General

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Arlington International Racecourse, Incorporated's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court grants defendant's motion for summary judgment.

## I. BACKGROUND[1]

Plaintiff Dana Hoffman–Dombrowski ("Dombrowski") has worked for defendant Arlington International Racecourse, Incorporated ("Arlington") since June of 1982. Arlington owns and operates intertrack wagering and off-track betting facilities throughout Illinois. Dombrowski brought this suit against Arlington pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* In Count I, Dombrowski alleges that Arlington discriminated against her because of her sex when it failed to promote her and transferred her employment to another location. In Count II, Dombrowski alleges that Arlington retaliated against her for complaining about discriminatory practices in violation of 42 U.S.C. § 2000e–3.

The matter is currently before the court on Arlington's motion for summary judgment. Arlington contends that it is entitled to judgment as a matter of law on Count I and Count II because (1) Dombrowski has failed to establish her prima facie case and (2) even if Dombrowski has established her prima facie case, Arlington has legitimate nondiscriminatory reasons for not promoting her and for transferring her employment.

Rule 12. The new name and number is Local Rule 56.1. Local Rule 56.1(a)(3) is the new counterpart of Local General Rule 12(M); Local Rule 56.1(b)(3) is the new counterpart of Local General Rule 12(N). However, to be consistent with the parties' filings, the court will refer to the parties' Local General Rule 12(M) and 12(N) Statements.

In order to understand this court's opinion, one must be aware of a number of facts. For the sake of clarity, a recitation of these facts is in two parts. Part A discusses the relevant history of the operations at Arlington. Part B discusses events which relate to Dombrowski's employment discrimination claims.

## A. *History of operations at Arlington*

In early September of 1997, Arlington announced that it would not hold live horse racing for the 1998 race year at its racecourse located in Arlington Heights, Illinois. Therefore, Arlington determined that its Trackside[2] location would be the only mutuel wagering open at that location during 1998. Accordingly, Arlington needed a larger staff at Trackside and added the position of assistant general manager. These changes led to unique staffing challenges for Arlington, which required it to identify employees whom it wanted to retain and to not lay-off. (Def.'s 12(M) Statement at 4, ¶¶ 20–21.)

On October 17, 1997, Arlington transferred Rita Supergan, Joy Spindler, Bob Maramba ("Maramba"), Wendy Stevens ("Stevens"), and Dan Majchrzak ("Majchrzak") from the live meet to Trackside. During these transfers, Arlington promoted Maramba and Stevens each to the position of assistant manager and Majchrzak became the assistant general manager. (Pl.'s 12(N) Statement at 4, ¶ 25; Pl's Ex. 16.) Prior to Majchrzak's transfer, he was the assistant director of mutuels at the live meet which, in some respects, was more complex than his new position. Furthermore, during the off-season for live meets from 1993 to 1995, Majchrzak supervised Dombrowski at Trackside.

Around this same time, Arlington transferred Dombrowski and Lisa Shirk from Trackside to other off-track betting facili-

ties ("OTB's"). According to Arlington, it made this decision after determining where their strengths could be utilized. (Def.'s 12(M) Statement at 7, ¶ 31; Def.'s Ex. D at 118:3–9 & 119:2–11.)

## B. *Events relating to Dombrowski's employment*

Dombrowski began her work at Arlington as a union member, working information windows at Trackside. Between 1983 and June of 1996, Dombrowski held the positions of assistant money room head, floor supervisor, assistant mutuel manager, auditor, and building manager. During this time, she also had responsibilities as a "head trainer."[3] In June of 1996, Arlington promoted Dombrowski to one of the three assistant manager positions at Trackside.

Also, in June of 1996, Arlington hired Scott Lager ("Lager") as the general manager of Trackside. Shortly thereafter, Dombrowski allegedly told Scott Mordell ("Mordell"), the chief executive officer, and Linda Kica ("Kica"), the human resources director, of her belief that Arlington did not promote her to the general manager position because of her gender. Dombrowski also contends that she informed Jim Stumpf ("Stumpf"), the vice president of off-track operations, and Lager of her belief in July of 1996. (Pl.'s 12(N) Statement at 2, ¶ 13.)

In April of 1997, Lager heard rumors that a customer and a former employee had been in the manager's office at Trackside with Dombrowski and two other assistant managers. Thus, on April 14th, Lager sent a memorandum to the Trackside managers stating that the Trackside offices were for use by management and executives only, and not for use by non-Arlington employees. Shortly after this

---

**2.** " 'Trackside' is an intertrack wagering facility next door to Arlington's race track where customers can place wagers on races run at Arlington and throughout the county." (Pl.'s 12(N) Statement at 12, ¶ 4.)

**3.** The parties dispute whether this was a full time position or an occasional job responsibility. (Pl.'s 12(N) Statement at 2, ¶ 10; Def.'s 12(M) Reply Statement at 2, ¶ 10.)

memorandum, Lager installed a security camera in the office. While viewing one of the tapes, Lager observed Dombrowski kissing a non-employee customer in the office. (Def.'s Ex. B at 99:4–10 & 100:9–12; Pl.'s Ex. 2 at 99:4–10.) Following this incident, Lager once again observed Dombrowski interacting with the same non-employee customer in the office. On September 5, 1997, Lager issued a written warning to Dombrowski for violating Arlington's policy prohibiting unauthorized people from being in the office.

As explained earlier, in October of 1997, Arlington transferred Dombrowski to its Waukegan, Illinois OTB facility. At Waukegan, she retained her position of assistant manager and the transfer did not effect her current pay. Furthermore, Dombrowski is the highest paid assistant manager and earns more than Waukegan's assistant general manager and general manager. The parties dispute whether or not Dombrowski's responsibilities decreased with the transfer. (Def.'s 12(M) Statement at 9–10, ¶¶ 40–43; Pl.'s 12(N) Statement at 7–8, ¶¶ 40–43.)

On or about November 17, 1997, Dombrowski complained to Mordell that she believed Arlington transferred her because of her gender. At this time, Mordell explained to her that the transfer was not because of her gender, but because Arlington was in the midst of change.

## II. *DISCUSSION*

### A. *Local General Rule 12*

Before addressing the merits of Arlington's motion, the court must address Arlington's failure to comply with Local General Rule 12 ("Rule 12"). Rule 12(M) requires the party moving for summary judgment to file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." LOCAL GEN.R. 12(M). The required statement is to consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.* Rule 12(N) then requires the opposing party to file among other items:

> a concise response to the movant's statement that shall contain: (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials.

LOCAL GEN.R. 12(N)(3). Rule 12(N) further provides that "all material facts set forth in the statement of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Id.* The Seventh Circuit has upheld strict compliance with Rule 12. *Huff v. UARCO Inc.,* 122 F.3d 374, 382 (7th Cir. 1997).

In this case, Arlington filed a proper Rule 12(M) Statement. However, it failed to file a proper Rule 12(M) Reply. In Arlington's first Rule 12(M) Reply, it failed to provide "a response to each numbered paragraph" of Dombrowski's Rule 12(N) Statement, LOCAL GEN.R. 12(M) (citing LOCAL GEN.R. 12(N)(3)(a)), and improperly included legal arguments with its factual statements. The court pointed out these deficiencies to Arlington in open court on August 5, 1999. Accordingly, the court struck Arlington's first Rule 12(M) Reply.

Arlington submitted a second Rule 12(M) Reply. In this Rule 12(M) Reply, Arlington again put forth legal arguments. These legal arguments are improper. Thus, the court will strike them.

### B. *Standard for deciding a motion for summary judgment*

A motion for summary judgment is proper "if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir.1997).

The burden is on the moving party to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989).

## C. *Count I—Employment discrimination*

Dombrowski's claims against Arlington are for employment discrimination under Title VII. Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion," or sex. 42 U.S.C. § 2000e–2(a)(1). Discrimination may be established in either of two ways—through direct evidence or through the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir.1991). Dombrowski offers no direct evidence that race, color, religion, or sex played a role in Arlington's decisions to transfer her employment and not to promote her.[4] Thus, her claims will be analyzed under the burden-shifting method enunciated in *McDonnell Douglas*.

Under *McDonnell Douglas*, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of employment discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. To establish a prima facie case, Dombrowski must show: (1) that she belongs to a protected group; (2) that she performed satisfactorily; (3) that her employer subjected her to an adverse employment action; and (4) that similarly-situated employees outside her classification received more favorable treatment. *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir.1994). If the plaintiff establishes a prima facie case, then "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its allegedly biased employment decision." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir.1996). If an employer meets its burden, then the plaintiff must show, by a preponderance of the evidence, that the employer's stated reason for dismissal is nothing more than pretext. *Id.*

### 1. The prima-facie case

Dombrowski's claims of employment discrimination are based on Arlington's decision to transfer her employment and fail-

---

4. In the midst of her arguments under the *McDonnell Douglas* burden-shifting method, Dombrowski contends that a couple remarks made by Lager are direct evidence of sex discrimination. However, in order for the remarks to be direct evidence, they must indicate that Arlington was transferring her because she was a female. *See Kennedy v.* *Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 723–24 (7th Cir.1998). Lager's alleged remarks, that her career was over and that she should quit, do not in any way indicate that the basis for her transfer was her gender. Thus, these remarks are not direct evidence of gender discrimination.

ure to promote her. Dombrowski is a female; thus, she is a member of a protected class. Accordingly, the first element of her prima facie case is not in dispute. Furthermore, neither party disputes Dombrowski's performance. Thus, the second element of the prima facie case is also not in dispute. Arlington, however, contends that Dombrowski has failed to establish element three of her prima facie for her wrongful transfer claim and element four of her prima facie case for both her wrongful transfer and failure to promote claims.

Arlington alleges that Dombrowski has failed to establish the third element—an adverse employment action—for her wrongful transfer claim. Although an "adverse employment action has been defined quite broadly" by the Seventh Circuit, *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996), the court has noted that "not everything that makes an employee unhappy is an actionable adverse action." *Id.* Indeed, minor and trivial employment actions, *see id.*, and employment actions that merely inconvenience the employee, *see Lederer v. Argonaut Ins. Co.*, No. 98 CV 3251, 2000 WL 126933, at *9 (N.D.Ill. Jan.28, 2000), are not actionable. Instead, the action must materially affect the employment conditions. *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 932 (7th Cir.1996). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993). Furthermore, a dramatic decrease in the skill level required to preform one's job responsibilities can rise to the level of an adverse employment action. *See Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir.1994).

In this case, Dombrowski retains the same job title, salary and benefits which she had at Trackside before her transfer. However, Dombrowski contends that after her transfer she has significantly less responsibilities. Prior to her transfer, her responsibilities included supervising, disciplining, hiring, and firing the mutuel clerks and putting together the budget and the payroll for the mutuels' department, (Pl.'s 12(N) Statement at 12, ¶¶ 6 & 17, ¶¶ 48–49.) After her transfer, her responsibilities became setting the schedule for four full time clerks and one part time clerk, balancing and making the deposits for the money room and emptying the lottery machines. (Pl.'s Ex. 1 at 12:7–20 & 315:18–22.) Furthermore, she complains that since her transfer she has never been asked to share her expertise in mutuels and customer relations and has learned nothing new about the running of the food and beverage operation. (*Id.* at 316:1–16 & 317:3–8.) Arlington on the other hand, contends that Dombrowski's key job responsibilities remain unchanged. (Def.'s 12(M) Reply Statement at 18–19, ¶ 40 & Tab 5.) While the court has doubts that Dombrowski actually suffered a materially adverse employment action, there is a question of fact as to whether Dombrowski's job responsibilities materially changed after her transfer. Thus, the court must find that Dombrowski has established the third element of her prima facie case with respect to her wrongful transfer claim.

Arlington also alleges that Dombrowski has failed to establish the fourth element of her prima facie case for both her wrongful transfer and failure to promote claims. The court agrees. Although Dombrowski does not directly address this element, she does state: "No other persons were transferred out of Trackside except Dombrowski and her cousin Lisa Shirk. A male with less experience got the job that was promised to Dombrowski while she was transferred to Waukegan." (Pl.'s Resp. at 9–10.) The court can only assume from the pleadings that the male to whom Dom-

browski is referring is Majchrzak.[5] Regardless, the court can find no supporting evidence for this allegation nor does Dombrowski provide any citations to the record or any argument that Arlington treated Majchrzak—or any other male who was similarly situated—more favorably. Accordingly, the court finds that Dombrowski has failed to establish her prima facie case for her wrongful transfer and failure to promote claims.

### 2. Legitimate, nondiscriminatory reason

■ Furthermore, even if Dombrowski established her prima facie case, Arlington has established a legitimate, nondiscriminatory reason for transferring her and for failing to promote her. Arlington contends that it transferred Dombrowski to the Waukegan facility because Stumpf believed she would be an asset to the other location. (Def.'s 12(M) Statement at 7, ¶ 31.) At this time, unlike in prior years when Arlington closed the live meet at the end of the season, Arlington announced it would have no live meets during the 1998 racing season. Thus, Arlington had to reduce its staff and transfer employees to various locations. Dombrowski luckily was not a member of the employees whom Arlington had to fire; Dombrowski was a member of the employees whom Arlington tried to retain. As the Seventh Circuit has stated, the court will "not sit as a super-personnel department that reexamines an entity's business decisions." *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 396 (7th Cir.1998). Thus, Arlington has offered legitimate, nondiscriminatory reasons for transferring her employment to the Waukegan facility and for failing to promote her.

### 3. Pretext

■ Because Arlington established a legitimate, nondiscriminatory reason for its decisions, Dombrowski must now show that the proffered reason is pretextual. In order to do so, Dombrowski must "*specifically* refute the facts which allegedly support the employer's proffered reasons." *Mills v. First Federal Sav. & Loan Ass'n*, 83 F.3d 833, 845 (7th Cir.1996) (citation omitted) (emphasis in original). There are three ways to show that the proffered nondiscriminatory reason is pretextual: (1) the employer's explanation has no basis in fact; (2) the explanation is not the "real" reason; or (3) the explanation is insufficient to warrant the adverse employment action. *Id.*

■ In this case, Dombrowski contends that she has established pretext by each of the aforementioned methods. However, the court disagrees. First, Dombrowski does not establish that Arlington did not have to reorganize due to the cancellation of the 1998 live racing season nor does she establish that this reorganization did not warrant her transfer. Dombrowski repeatedly asserts that Arlington did not need to reorganize because the live racing season ends every year. What she is not addressing is the fact that Arlington had no intention of holding live racing the following year. Thus, Arlington was not dealing with just a few off-season months, but with the possibility of a year or more of no live horse racing. Second, Dombrowski does not provide this court with any evidence that Arlington's motive to transfer her was gender related and, thus, not the "real" reason. Dombrowski alleges that certain comments allegedly made by Lager and Stumpf indicate that Arlington's reorganization was not the "real" reason for her transfer: Lager allegedly said that her career was over and that she should just quit (Pl.'s Ex. 1 at 19:2–18.); Stumpf allegedly told Scalamonga that there was a

<hr/>

**5.** In a previous opinion, *Hoffman–Dombrowski v. Arlington Int'l Racecourse, Inc.*, 11 F.Supp.2d 1006 (N.D.Ill.1998), this court determined that Dombrowski cannot base her Title VII claims on any events which occurred and of which Dombrowski was or should have been aware prior to February 6, 1997. *See id.* at 1011. Thus, she has no claim for failure to promote relating to Arlington's promotion of Lager.

good possibility that Dombrowski would not even come to work (*Id.* at 119:21–24.). However, these comments do not establish or indicate that her gender was the basis for her transfer. Thus, none of Dombrowski's arguments show that Arlington's proffered reason for not promoting her and for transferring her employment was pretextual.

In sum, even if Dombrowski was able to establish her prima facie case of employment discrimination, she has failed to show that Arlington's proffered reason was pretextual or a lie. Accordingly, Arlington is entitled to judgment in its favor on Count I of Dombrowski's Second Amended Complaint.

### D. *Count II—Retaliation claim*

■ Dombrowski also alleges that Arlington transferred her and failed to promote her in retaliation for her complaints about gender discrimination. Retaliation claims are analyzed under a variant of the *McDonnell Douglas* burden-shifting method. To establish a prima facie case of retaliation, Dombrowski must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse employment action. *Eiland v. Trinity Hosp.*, 150 F.3d 747, 753 (7th Cir.1998). Once Dombrowski establishes her prima facie case, Arlington has the burden of producing a valid, non-retaliatory reason for its action. *See Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir. 1999). In order to prevail, Dombrowski must then rebut Arlington's proffered reason by establishing that it is merely pretextual. *Id.*

Arlington does not address the first element of Dombrowski's prima facie case; thus, the court will assume that Dombrowski has established she was engaged in a statutorily protected activity. Furthermore, although tenuous, as the court has previously discussed, *see* Part II.C.1., Dombrowski has sufficiently alleged that she suffered from an adverse employment action. Thus, she has established the second element of her prima facie case. Accordingly, the court will focus on the required causal link between the adverse employment action and the protected activity.

■ A plaintiff can establish the causal link "by showing that there was a suspiciously short period of time between" her complaint and the adverse employment action. *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1039 (7th Cir. 1998). As the time period between the two events increases, the hint of a causal link decreases. *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (citing *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796–97 (7th Cir. 1997)). In this case, Dombrowski's latest complaint of gender discrimination occurred in July of 1996. Arlington did not transfer her employment or fail to promote her, however, until October of 1997. This thirteen-month time period is not sufficient to establish a causal link. *See Parkins*, 163 F.3d at 1039 (finding that a time period of three months between the protected activity and the adverse employment action is insufficient); *Davidson*, 133 F.3d at 511 (finding that a five month time period is insufficient). Thus, Dombrowski has failed to establish her prima facie case of retaliation.

Furthermore, even if Dombrowski had established her prima facie case, she has failed to establish that Arlington's proffered nondiscriminatory, legitimate reason for transferring her and for not promoting her, *see* Part II.C.2., was pretextual, *see* Part II.C.3. Accordingly, Arlington is entitled to judgment in its favor on Count II of Dombrowski's Second Amended Complaint.

### III. *CONCLUSION*

For the foregoing reasons, the court grants Arlington's motion for summary judgment. Final judgment in this case is

entered in favor of defendant Arlington International Racecourse, Incorporated and against plaintiff Dana Hoffman–Dombrowski.